**GERSTENLAUER v. UNITED STATES et al.**

Civ. No. 8668.

United States District Court
E. D. New York.

Dec. 9, 1952.

Edward Friedman, New York City, for plaintiff.

Frank J. Parker, U. S. Atty. for Eastern District of New York, by Irving P. Kartell, Asst. U. S. Atty., Brooklyn, N. Y., for the United States.

Bernard H. Sandler, New York City, for defendants, Edward J. Andersen, as Administrator, and Lorna Alberta Andersen.

BYERS, District Judge.

This cause, in which the Government is neutral as a stake-holder, involves the single question of whether one Lavin M. Andersen, who died September 9, 1945 while holding a commission in the United States Army as Major (M.C.), accomplished a change of beneficiary as to two $5,000 U. S. National Service Life Insurance policies in favor of his daughter, Mary Elizabeth, in place of his mother, Mary Josephine (who died August 30, 1946, her administrator being named as a defendant) as to Policy No. K678905, dated June 1, 1927; and of his wife, Lorna Alberta as to Policy No. K860637, dated April 1, 1929.

The complaint was filed November 1, 1947 by Andrew Portoghese as Trustee for the daughter, Mary Elizabeth, under a trust agreement to be explained, against the United States, Edward J. Andersen as Administrator of Mary Josephine, and the said Lorna Alberta.

Since then, Portoghese has died and his place has been taken by the plaintiff above-named, who became substituted trustee by order of the Supreme Court of the State of New York dated December 23, 1949.

The following facts were agreed to at the trial:

Reliance is had by the plaintiff to establish the fact of a change of beneficiary, upon a trust agreement dated August 11, 1942, executed by the insured which in presently material respects provided:

The insured is called the settlor and Portoghese is called the trustee, and the recital is of the issuance to the settlor of five identified life insurance policies by three named private companies, and two War Risk policies issued by the United States. As to the latter, the document reads:

"6. United States Government Life Insurance Policy (sic) issued by the United States Government during the First World War in the aggregate sum of $10,000.00, bearing Nos. K860637 and K678905.

"*Second:* (Embracing all policies.) That the 'Settlor' is desirous and un-equivocally appoints one, Andrew Portoghese, Esq., herein called the 'Trustee' of all of the proceeds and benefits of the aforementioned numbered policies for the sole use and benefit of one, Mary Elizabeth Andersen, an infant daughter of the 'Settlor'."

That the insured is the physical possessor and owner of all said policies, except three which were issued by Northwestern Mutual etc. Company and which are now being held by representatives of that company. (It may be assumed that the insured had borrowed from the company on those policies.)

"*Fourth:* That the 'Trustee' ask, demand, receive and collect any and all sums of money payable on the aforementioned numbered life insurance policies, or thereunder, upon the death of the 'Settlor', upon receiving proof of such death.

"*Fifth:* That the 'Trustee' will hold and invest all monies so received and collected as a trust fund, and to pay over the net income from the said trust fund and so much of the principal thereof as the 'Trustee' in his uncontrolled and absolute discretion, may deem advisable in monthly installments to Mary Elizabeth Andersen, the daughter of the 'Settlor' during her lifetime."

If the daughter shall predecease the insured, the trust fund is to be transferred to and become part of his estate; the trust term seems to be the lifetime of the daughter, but, upon her attaining her thirty-fifth birthday, the principal and any accumulations of income are to be paid to her.

The insured covenants with his trustee that he "will pay any and all premiums, assessments and other charges and perform any and all acts that may be necessary or desirable, in order to continue the life of the insurance policies in full force and effect."

Further, that the failure to deliver physical possession of the policies shall not invalidate the agreement "and if there are

any statutes or rules of law requiring the physical delivery of the said policies, then this 'Settlor' hereby specifically waives the provisions as applicable thereto."

The insured reserves the right to modify the terms of the agreement by a written instrument to be delivered by him to the trustee, and the latter accepts the trust upon specified terms, including:

"(a) That it shall be no part of the duty of the 'Trustee' to see to any recording, registry, or filing of this agreement, or any supplemental agreement, or of any instrument of future assurance, or any notice thereof."

It is not part of the trustee's duty to give notice of the making of the agreement or of any supplemental agreement,

"except to the insurance companies herein involved, if the insurance companies' rules and regulations require to give notice of the within trust agreement."

The trustee is under no duty to make payments of premiums. Further, "that it shall be no part of the duty of the 'Trustee' to make any investigation to determine whether or not any of the said policies of life insurance are in fault (sic), or in full force and effect."

"*Tenth:* That the 'Trustee' shall not be answerable for the act, default, or misconduct, of the 'Settlor', or of any insurance company, nor shall the 'Trustee' be liable for any action whatsoever, except for his own wilful misconduct.

\* \* \* \* \* \*

"*Fifteenth*: That the trust herein created shall be deemed a New York trust, and shall, in all respects, be governed by the Laws of the State of New York,"

and that the trustee's compensation shall be computed according to the said laws.

It was further agreed at the trial that the daughter, Mary Elizabeth Andersen, became of age August 30, 1952.

Defendants' Exhibit A embodies the decision of the Board of Veterans Appeals, dated September 4, 1947, reading in part:

"Under date of September 18, 1942, Andrew Portoghese transmitted to the Veterans Administration a trust agreement, under the provisions of which he was named trustee to receive the proceeds of both of the above-mentioned policies. On October 9, 1942, two Forms 724, change of beneficiary, were mailed to the insured partially completed, the insured being requested to select the one which he desired, the one selected to be signed by him, witnessed, and returned to the Veterans Administration with the policies for endorsement. A careful and thorough examination of all available records failed to disclose that the insured replied to the letter of October 9, 1942."

(Note: The mailing seems to have been to the trustee, not to the insured.)

That decision is contrary to the position taken by the Chief of the Life Insurance Claims Division under date of October 5, 1945, in a letter (Plaintiff's Exhibit 3,) to the trustee, which contained the following:

"Both policies are in force under the Extended Insurance provisions of the policies and there is payable to you as trustee $9,825.43 in one sum.

"In order that settlement in your favor may be effected it is requested that you execute the enclosed form 514b, and return the Government Life Insurance policies."

It is agreed that these policies were sent to the Government under date of October 8, 1945 and are now in its possession, and were so delivered in connection with the claim by the trustee for the proceeds of the policies.

Disagreement was declared on January 2, 1947, but the proceedings within the Administration between October 8, 1945 and the declaration of the disagreement do not appear and are not pertinent to this controversy. The position of the Veterans Administration, in declining to recognize the change of beneficiary to be found in the trust agreement, is based upon the failure on the part of the insured to execute the forms sent to him for the purpose of com-

pleting the departmental procedure of endorsing that change on the policies.

These policies provide, in regard to the beneficiary, that:

"12. The Insured shall have the right at any time, and from time to time, and without the consent or knowledge of the beneficiary, to change the beneficiary under this policy * * *. Every change of beneficiary must be made by notice, signed by the insured, to the Bureau of War Risk Insurance at its office in Washington, D. C. (accompanied by the policy for an endorsement of the change thereon by the said Bureau), and shall not take effect unless such change is endorsed on the policy. * * *"

The foregoing, having been stipulated, constitute the facts as found by this Court.

It is contended on the part of the wife and the mother's administrator, that the trust agreement is to be deemed to be only an expression of intention on decedent's part, to effect a change in the respective beneficiaries, in order to effectuate which he must be held to have understood that he was required to execute and deliver the forms forwarded to Andrew Portoghese, the deceased trustee, as stated in the above quotation from the decision.

That argument necessarily brings into question the legal effect to be given to the language which has been quoted from paragraph 12 of the policy, wherein the right to change the beneficiary is stated in unmistakable terms; clearly that is of the essence of the insurance contract between the Government and the insured.

The provision concerning the method to be followed in creating evidence that such right has been exercised, is in aid of administration, and does not affect the essential relationship between the insured and the insurer. Upon one occasion at least, that provision has been judicially declared to have been for the convenience of the Government to minimize the possibility of making payments to persons not entitled to receive the same. Murphy v. United States, D.C., 5 F.Supp. 583, in which case

proper forms seem to have been made out in accordance with the regulations of the Administration which were received on the same day that the death of the insured occurred, but the endorsement on the policy was not effected for nearly a year thereafter. The court decided the controversy between the original beneficiary and the new ones named by the decedent, in favor of the latter, and on page 585 of 5 F.Supp. the following occurs:

"Plaintiff's contention is that paragraph 12 of the contract in the policy determines and controls the method by which a change in the designation of the beneficiary may be made, and that, the rule laid down not having been complied with, the attempted change is invalid.

"I cannot so hold. * * * Section 12 was inserted in the policy for the protection of the United States. It protects the government against payment to any person not entitled under the terms of the policy."

And later:

"This provision being inserted in the policy for the protection of the government in making payment under it and not for the protection of any named beneficiary having no vested interest therein, I hold that a change in beneficiary became effective as of the date the insured signed the written notice of change as provided in section 12."

While the present facts are not closely parallel to those in the above case, the comment which has been quoted concerning the true nature of paragraph 12 of the policy is clearly applicable. This insured executed an elaborate document to accomplish a clear purpose as to several policies of insurance including those in suit, and that purpose could not have been superseded by an act or omission of a less formal character; certainly no change of intention can be predicated of the failure to sign and forward papers which at most could have been confirmatory in character, and which would have added nothing to a condition already created.

■ The last observation has been offered in view of Defendants' Exhibits B, C and D for Identification. These are letters, apparently written by Portoghese, to the insured under dates of November 19, 1942, October 22, 1943 and October 28, 1943. It was stated at the trial that these papers formed part of the effects of the insured which were sent to Lorna Alberta Andersen, wife of the insured.

In these circumstances, I do not see how these letters can be deemed to constitute legal evidence of anything save that they were actually written and received, since both the writer and the recipient are now deceased and testimony is unavailable concerning any other communications, verbal or written, which may have passed between them involving the same subject-matter.

If the ruling excluding these letters, which is hereby made, shall be held to be erroneous, and they are indeed consulted as evidence legally relevant to this controversy, the most that can be attributed to them would be that Portoghese called the attention of the insured to the language of the policy which has been quoted, and the rules and regulations of the Veterans Administration, and asked him to execute papers in conformity therewith, and that the insured failed to respond to those requests.

It must be obvious that his reasons for not doing so would be purely speculative; he could have been so pre-occupied with the duties of his calling that he just neglected to sign these papers; or he could have been satisfied in his own mind that he had done all that was necessary to accomplish the assignment of the policies and the change of beneficiary, and therefore would not take the trouble to sign documents to confirm a purpose already clearly made manifest.

Exhibits C and D for Identification address the insured by his title of Major in the Medical Corps at Camp Butner, N. C., and it could be reasonably inferred that the recipient felt that he had enough paper work in connection with his official duties to feel free to ignore that which to him may have been purely formal and without legal necessity.

■ It is held as a matter of law that the insured accomplished a change of beneficiary as to each policy in suit by the trust agreement. Incidentally, that has been given legal effect by a judgment of the New York Supreme Court involving one of the policies issued by a private company.

It is unnecessary to quote from the many cases in which the courts have looked to the substance rather than to the form in giving effect to a change in beneficiary named in Government life insurance policies, where the purpose is clear and all reasonable efforts have been made to effectuate it. The following have been consulted, among others: Burgess v. Murray, 5 Cir., 194 F.2d 131; Boring v. United States, 10 Cir., 181 F.2d 931; Senato v. United States, 2 Cir., 173 F.2d 493.

It is concluded that Lavin M. Andersen, the insured named in the Government policies above stated, effected a change of beneficiary in each, from his mother in one, and his wife in another, to the trustee for his daughter, Mary Elizabeth Andersen, named in the trust agreement dated August 11, 1942 forming part of the complaint in this cause, and that Robert Gerstenlauer, as substituted trustee, is entitled to judgment as prayed.

■ It is also concluded that judgment must go against Edward J. Andersen, as Administrator of Mary Josephine Andersen, for the additional reason that her rights, if any, seem not to have been preserved so as to entitle her administrator to take anything under policy No. K678905, if 38 U.S.C.A. § 802, subd. (i) and United States v. Henning, 73 S.Ct. 114, are understood.

Settle judgment in favor of plaintiff, leaving a blank space for attorney's fee, in accordance with the foregoing.